**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

EUGENE RAMAC CASTRONUEVO,

    Petitioner,

vs.

THOMAS LONG,

    Respondent.

/

No. CIV S-06-1141-MCE-CMK-P

FINDINGS AND RECOMMENDATIONS

    Petitioner, a prisoner proceeding with counsel, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court is petitioner's petition for a writ of habeas corpus (Doc. 1), filed on May 25, 2006.  Following denial of respondent's motion to dismiss[1] on September 11, 2006, respondent filed an "answer"[2] (Doc. 16) on October 11, 2006, and petitioner filed a traverse (Doc. 18) on February 20, 2007.   On May 25, 2007, the

---

[1]     Respondent argued that the claims were not exhausted.

[2]     As outlined in the court's May 25, 2007, order, this document does not address the merits of any of petitioner's claims.  Rather, respondent asserts for the first time the affirmative defense of procedural default.

court directed respondent to file a supplemental answer pursuant to Rule 5 of the Federal Rules Governing Section 2254 Cases which addressed the merits of the claims raised in the petition. The court specifically directed respondent not to raise any additional procedural defenses given that respondent already had ample opportunity to do so in its initial motion to dismiss and October 11, 2006, filing.  On June 22, 2007, respondent filed a supplemental answer (Doc. 21) addressing the merits.  Also on June 22, 2007, respondent sought leave to file a motion to dismiss asserting a statute of limitations defense (Doc. 20).  On June 27, 2007, the court issued an order noting that affirmative defenses not raised in respondent's initial responsive pleading were likely waived and construed the filing as a motion for relief from this waiver.  Petitioner was given an opportunity to file a supplemental traverse in response to respondent's June 22, 2007, filings.  Petitioner filed his supplemental traverse (Doc. 23) on July 26, 2007.

## I.  BACKGROUND

Petitioner, who is a legal permanent resident currently in federal custody facing removal proceedings, was convicted following a jury trial of seven misdemeanor counts arising from his secretly videotaping a 15-year-old girl while she undressed and slept.  On January 11, 2002, petitioner was sentenced to 3 years probation with a requirement that he serve 365 days of electronic monitoring.   After completing the electronic monitoring portion of his sentence, petitioner was taken into federal custody in November 2003 pending removal proceedings resulting from his misdemeanor convictions.

On December 6, 2004, petitioner filed a motion for leave to file a late notice of appeal challenging his convictions.  In petitioner's motion, he argued that his trial counsel – who had subsequently been suspended from the practice of law in connection with a disciplinary matter – incorrectly advised petitioner that there were no immigration consequences to his convictions because they were for misdemeanors.  Petitioner also argued that he did not know that he had a right to appeal the convictions.  On December 14, 2004, the Sacramento County

Superior Court issued an order denying petitioner's motion to file a late notice of appeal.

Petitioner then sought relief in the California Court of Appeal on March 9, 2005, by way of an application for a petition for writ of mandate directing the Superior Court to allow him to file a late appeal. The Court of Appeal denied relief on March 17, 2005. Petitioner filed a petition for review in the California Supreme Court on March 28, 2005. On April 13, 2005, the California Supreme Court granted the petition for review and ordered as follows:

> The matter is transferred to the Court of Appeal, Third Appellate District, with directions to vacate its order denying mandate and to issue an alternative writ to be heard before that court when the proceedings is ordered on calendar.

The government informed the Court of Appeal that, in lieu of filing a return it would concede that petitioner should be granted leave to file a late appeal. The Court of Appeal, however, did not accept the concession. Instead, it summarily denied leave to file a late appeal. In its September 15, 2005, decision, the Court of Appeal concluded:

> Here, Castronuevo delayed over three years in filing a notice of appeal. He contends the delay was excusable because he did not know of his right to appeal, and he had difficulty in finding a lawyer to represent him without a retainer. While the delay for the period Castronuevo was ignorant of his right to appeal may be excusable, his reply to the Supreme Court indicates he learned of his right to appeal when he faced permanent removal from the United States. That occurred at least a year before he filed his ex part motion. He explains the delay . . . first by his need to obtain a transcript, and then his search for a lawyer, a search he declared took "many weeks," and that his attorney claimed took "many months." However long the search took, present counsel had all the documents by September 2004, but the motion was not filed until December. Castronuevo offers no explanation for this further delay. Given that the time limit for filing a notice of appeal from a misdemeanor conviction is only 30 days . . . , good cause for relief from default cannot be established where there is an unexplained delay of over 60 days.

Petitioner filed a second petition for review in the California Supreme Court on October 21, 2005. While Justice Kennard was of the opinion that the petition should be granted, the California Supreme Court denied review without comment or citation on November 30, 2005.

///

1  Petitioner filed a petition for writ of habeas corpus in the California Supreme
2  Court on July 27, 2006, which was denied on August 2, 2006, without comment or citation.
3  Justice Kennard was of the opinion that an order to show cause should issue.  This court has
4  concluded that petitioner's claims are exhausted.

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "relitigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

/ / /
/ / /
/ / /
/ / /

4

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001).

Under § 2254(d), federal habeas relief is available where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 293 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

1 State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See id.; see also Wiggins v. Smith, 123 S.Ct. 252 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 123 S.Ct. at 1175. This is because ". . . the gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000). Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III.  DISCUSSION

This case is the latest stop in petitioner's quest to be able to challenge his convictions in an appeal to the state courts.  Petitioner raises two substantive claims in the instant federal petition.   In his Claim 1 and Claim 2, petitioner asserts that his trial counsel was ineffective for failing to file a notice of appeal on his behalf and for failing to correctly advise him of the immigration consequences of his misdemeanor convictions.  In petitioner's Claim 3, he asserts that the California Court of Appeal violated his federal constitutional right to due process by ending his appeal after the California Supreme Court had ordered that an alternative writ be issued and after the government conceded that the appeal should be allowed to proceed.  Respondent has addressed these claims on the merits, in addition to asserting various affirmative defenses.

   A.   **Respondent's Affirmative Defenses**

As noted above, respondent has asserted the affirmative defenses of procedural default and the statute of limitations, in addition to responding to the merits of petitioner's claims.  Specifically, respondent argues that all the claims are procedurally barred by petitioner's ". . . dilatory inaction in waiting nearly three years before seeking to file a belated notice of appeal."  Respondent also argues that Claims 1 and 2 are time-barred.[3]  In his supplemental traverse, petitioner argues, among other things, that respondent waived the statute of limitations defense.

   1.   Statute of Limitations

Respondent's argument, in its entirety, is as follows:

> Generally, a state prisoner challenging his custody has one year to file his federal petition from the date on which his conviction became final by the conclusion of direct review, or the expiration of the time for seeking such review.  See 28 U.S.C. § 2244(d)(1)(A).  In this case, Petitioner was originally sentenced on January 11, 2002.  Petitioner claims that he first learned that he faced removal from the United States as a result of his

---

[3]   Respondent concedes that Claim 3 is timely.

misdemeanor convictions in November 2003. Petitioner then waited over a year, until December 6, 2004, to file an ex parte motion in the Sacramento County Superior Court requesting leave to file a belated notice of appeal. Assuming that the AEDPA's one-year statute of limitations began to run from November of 2003, the time Petitioner learned that he faced deportation problems from his misdemeanor convictions, the one-year filing period expired in November of 2004. Under this analysis, the claims Petitioner raises in Grounds One and Two of the petition would be time-barred.

Respondent's statute of limitations argument is raised for the first time in his brief filed on June 22, 2007. Respondent did not raise this defense in his first responsive pleading filed on June 26, 2006, or even in his second responsive pleading filed on October 11, 2006. All the facts relevant to respondent's statute of limitations argument were available to respondent before his first responsive pleading was filed, and respondent has not offered any explanation for his failure to raise it, along with his exhaustion argument, in his first responsive pleading. Because respondent did not raise the statute of limitations argument in his first responsive pleading, the court concludes that respondent has waived this defense. See Nardi v. Stewart, 354 F.3d 1134, 1141 (9th Cir. 2004).

Assuming that the district judge will not agree that respondent waived the statute of limitations defense, the court addresses the merits of respondent's argument. As to the period between November 2003 – when, according to respondent, petitioner first learned about this claims – and December 6, 2004 – when petitioner filed his motion for leave to file a late appeal – the court agrees with respondent that the entire one-year limitations period expired. In his supplemental traverse, petitioner argues:

> . . . [T]he clock should start to run only when Mr. Castronuevo knew that he had a right to appeal, and knew that he should challenge the denial of that right. This occurred, at the very earliest, when present counsel asked him, in early November 2004, so swear out a declaration regarding his trial attorney's misadvice that cost him the appeal.

///

///

///

8

1    Here, petitioner admitted in his state court briefs that he learned of his right to
2 appeal when he was taken into federal immigration custody in November 2003.  The court does
3 not agree with petitioner, however, that the limitations period began to run only when he also
4 knew he could challenge the denial of his right to appeal, and petitioner does not cite any authority
5 in support of this rather creative argument.  Essentially, petitioner is arguing that the clock started
6 to run when he realized the legal significance of the factual predicate to his claims, not when he
7 first knew the important facts.  The Ninth Circuit has rejected this argument.  See Hasan v.
8 Galaza, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001).  To the extent petitioner argues that he did not
9 know of the prejudice resulting from his trial counsel's ineffectiveness until November 2004, the
10 court does not agree.  It should have been obvious that he had been prejudiced by trial counsel's
11 "misadvice" at the time he was taken into immigration custody and faced removal proceedings as
12 a result of the misdemeanor convictions. See id. at 1154.

13   Based on the foregoing, the court finds that respondent waived the statute of
14 limitations defense by not raising it in his first responsive pleading.  Absent that waiver, however,
15 Claim 1 and Claim 2 should be denied as untimely.

16   2.   Procedural Default

17   In his second responsive pleading filed on October 11, 2006, respondent argues
18 that all of petitioner's claims are procedurally barred.  Specifically, respondent asserts that the
19 California Court of Appeal's September 15, 2005, decision denied relief based on a state
20 procedural default – the failure to file a notice of appeal within 30 days of judgment, as required
21 by former California Rule of Court 182(a).  As with respondent's statute of limitations defense,
22 the court finds that respondent has waived the procedural default argument because it was not
23 raised in his first responsive pleading.  See Nardi, 354 F.3d at 1141.
24 / / /
25 / / /
26 / / /

However, assuming again that the district judge will not agree that waiver applies, the court addresses the merits of respondent's argument. Based on concerns of comity and federalism, federal courts will not review a habeas petitioner's claims if the state court decision denying relief rests on a state law ground that is independent of federal law and adequate to support the judgment. See Coleman v. Thompson, 501 U.S. 722 (1991); Harris v. Reed, 489 U.S. 255, 260-62 (1989). Generally, the only state law grounds meeting these requirements are state procedural rules. Even if there is an independent and adequate state ground for the decision, the federal court may still consider the claim if the petitioner can demonstrate: (1) cause for the default and actual prejudice resulting from the alleged violation of federal law, or (2) a fundamental miscarriage of justice. See Harris, 489 U.S. at 262 (citing Murray v. Carrier, 477 U.S. 478, 485, 495 (1986)).

A prerequisite for application of a state procedural default to bar a federal habeas claim is that the default be adequate. For a state procedural default to be adequate, it must be clear, well-established, and consistently applied. See Bennet v. Mueller, 322 F.3d 573, 583 (9th Cir. 2003). In Morales v. Calderon, the Ninth Circuit concluded that California's rule allowing late habeas petitions to be filed if there is "good cause" for delay was not clear because it was vague. See 85 F.3d 1387, 1390-92 (9th Cir. 1996). The rule applied in this case is similarly vague in that a showing of good cause would excuse the default. The Court of Appeal noted the following in its September 15, 2005, decision:

> It may be that relief is available in a misdemeanor case where the defendant is not advised of his appeal rights by either the court or his attorney and therefore fails to file a notice of appeal on a timely basis. We need not determine the scope of relief available or what showing is necessary to qualify for relief. Whatever the basis for granting relief, Castronuevo is seeking relief from default. In granting such relief, courts have always required good cause. (citations to California cases omitted).

The Court of Appeal then concluded that petitioner had not demonstrated good cause. As in Morales, the court concludes that the default applied in this case is too vague to bar federal review. In other words, a discretionary state rule – such as the one applied in this case – cannot

bar federal habeas corpus review.  See Siripongs v. Calderon, 35 F.3d 1308 (9th Cir. 1994).  Respondent has cited no authority to meet his burden of establishing otherwise.

      Nor does the procedural default under former California Rule of Court 182 appear to have been consistently applied.  In People v. Djekich, the California Court of Appeal concluded that a notice of appeal was late under Rule 182, but nonetheless allowed the case to proceed as a habeas petition.  See 229 Cal.App.3d 1213, 1219 (4th Dist. 1991).  In this case, however, the Court of Appeal made no allowance for petitioner's claim to proceed as a habeas case.  In Isenberg v. Superior Court, the court flatly concluded that no relief was available if a notice of appeal was not timely filed.  See 39 Cal.App.2d 106 (2nd Dist. 1940).  In this case, however, the Court of Appeal made clear that relief was available on a showing of good cause.  See also In re Hernandez, 40 Cal.App.3d 893 (1st Dist. 1974) (applying a due diligence standard to allow an appeal which was late due to "lawyer dereliction").  As with the clarity of this procedural default, respondent has cited no authority to meet his burden of establishing consistency.

      Based on the foregoing, the court finds that the claims are not procedurally barred, either because respondent waived the defense or because the procedural default at issue is not adequate.

    **B.**    **The Merits**

      Assuming the district judge will agree that no affirmative defenses apply to preclude federal habeas review, the court next addresses the merits of petitioner's claims.

      1.    Ineffective Assistance of Counsel

      In his supplemental answer filed on June 22, 2007, respondent concedes that petitioner has established ineffective assistance of counsel as claimed in Claims 1 and 2.  Therefore, the parties agree that petitioner's constitutional rights were violated by his trial counsel's incorrect advice regarding the immigration consequences of his misdemeanor convictions and counsel's failure to advise petitioner regarding his appeal rights.  If no procedural defenses apply, relief should be granted on the basis of ineffective assistance of counsel.

11

1              2.     State Court Denial of Opportunity to Appeal

Petitioner contends that the state court violated his "federal constitutional rights" when the Court of Appeal ultimately denied his request to file a late appeal even after the government had conceded that he should be allowed to do so. Petitioner further elaborates upon this claim in his first traverse, filed on February 20, 2007. Specifically, petitioner argues:

> The [Court of Appeal] violated California writ procedure by refusing to accept the attorney general's concession, by never allowing the matter to be briefed, and by never holding an evidentiary hearing. Because the attorney general's concession was rejected and then no briefing and no hearing was held, there were no disputed facts before the [Court of Appeal]. The court then created its own facts from the record. They are wrong.
> The [Court of Appeal's] handling of this claim was inherently inconsistent and unfair. It was without precedent and violated California writ procedure. . . . [¶] An alternative writ gives the respondent an opportunity to oppose relief, or to concede. It is not a court's chance to decide facts without a hearing, or to rule on legal issues not raised and briefed.

After discussing California case law, petitioner added:

> . . . Here the . . . Attorney General conceded. That was the end of the case. The petition became moot. The [Court of Appeal] was not entitled at that point to file an opinion or to deny relief. It acted ultra vires in so doing. The application of this rule, if it is a rule at all, is wholly inconsistent with writ procedure.

Respondent argues that this claim is not cognizable because it involves purely state law issues.

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding on the state courts. See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). It is not available for alleged error in the interpretation or application of state law. Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). Habeas corpus cannot be utilized to try state issues de novo. See Milton v. Wainwright, 407 U.S. 371, 377 (1972).

///

///

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941). In order to raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).

In his supplemental traverse, petitioner argues that the Court of Appeal's action violated his federal right to due process. Citing Cooks v. Spalding, 660 F.2d 738 (9th Cir. 1981), he asserts that "[w]here a state court action is arbitrary or fundamentally unfair, the violation of state law also violates federal due process." Petitioner concludes that, because the Court of Appeal's action was inconsistent with state writ procedures and deprived him an opportunity to brief the issue and present oral argument, it was arbitrary and unfair. The court finds that petitioner has raised a colorable due process claim and, therefore, rejects respondent's contention that the claim is not cognizable.

As a preliminary matter, the court addresses the appropriate standard of review to be applied to this claim. Because this claim is based on the contention that the California Court of Appeal's September 15, 2005, decision was arbitrary and unfair, this claim could not have been raised any sooner than July 27, 2006 – the date petitioner filed his exhaustion habeas petition in the California Supreme Court.[4] The California Supreme Court – the first and only state court to consider this claim – denied relief on August 2, 2006, without comment or citation. Therefore, this court must apply the "unreasonable application of" standard of review. See, 336 F.3d at 853; Delgado, 233 F.3d at 982. In applying this standard, the court will assume the state court applied

---

[4] Petitioner's claim in that petition is identical to the claim raised in the instant federal petition.

13

the correct law.  See id.  Relief is only available if the state court's decision was objectively unreasonable.  See id.

The central point of petitioner's due process claim is that the Court of Appeal failed to follow California writ procedure and, as a result, rendered a decision that was arbitrary and unfair.  Thus, it is appropriate to examine California writ procedure.  In particular, because the California Supreme Court directed the Court of Appeal to vacate its earlier decision and, instead, to ". . . issue an alternative writ to be heard before that court . . .," this court will examine the alternative writ procedures to be used in the Court of Appeal.

Before doing so, it bears noting that the California Supreme Court did not provide the Court of Appeal with a list of options when it granted the petition for review.  Rather, the California Supreme Court specifically directed the Court of Appeal to issue an alternative writ to be heard by that court.  No other options – such as summarily denying relief – were open to the Court of Appeal by the plain language of the California Supreme Court's directive.  Nor was the Court of Appeal free to consider whether to issue an alternative writ because the California Supreme Court directed that the court of appeal shall issue an alternative writ.

Under California law, once an alternative writ is issued the matter becomes a "cause" entitling the parties to oral argument and a written opinion on the merits.  See Countrywide Home Loans, Inc. v. Superior Court, 54 Cal.App.4th 828, 832 (4th Dist. 1997).  In addition, where the California Supreme Court orders the Court of Appeal to issue an alternative writ, the appropriateness of extraordinary relief is conclusively established.  See San Diego Service Authority for Freeway Emergencies v. Superior Court, 198 Cal.App.3d 1466, 1468 n.2 (4th Dist. 1988).  Such an order is not, however, an indication that the California Supreme Court has concluded the petitioner is entitled to relief on the merits.  See TRW, Inc. v. Superior Court, 25 Cal.App.4th 1834, 1843 n.4 (2nd Dist. 1994); see also Cal. Gov't Code § 68081.  An alternative writ commands the respondent (in this case the Sacramento County Superior Court) to either:  (1) do the act requested to be performed, in which case the cause becomes moot; or (2) file

a written return setting forth the factual and legal bases which justify the respondent's refusal to do the act requested.  See Kernes v. Superior Court, 77 Cal.App.4th 525, 529 n.1 (4th Dist. 2000).

Petitioner argues:  (1) the Court of Appeal had no power to reject the California Attorney General's concession; and (2) the Court of Appeal violated California Government Code § 68081 and his right to due process by issuing a written opinion without providing petitioner an opportunity to be heard via briefing and oral argument.  Petitioner's first argument is unpersuasive.  As outlined above, issuance of an alternative writ permits the respondent to concede the issue by doing the act requested.  In this case, the respondent was the Sacramento County Superior Court, not the California Attorney General.  Thus, the cause would only have become moot if the Superior Court had elected to allow the late notice of appeal to be filed, which it did not do.  The California Attorney's General's concession was of no legal consequence.

Petitioner's second argument, however, is compelling in that it touches on the hallmark of due process and fairness – an opportunity to be heard.  It is clear that the California Court of Appeal failed to follow the procedures outlined above in at least two key respects.  First, the Court of Appeal did not issue an alternative writ as directed.  Instead, by summarily denying relief, it considered whether to issue such a writ and decided not to.  Second, and most troubling to this court, the Court of Appeal did not provide petitioner any opportunity to be heard before issuing its decision.  This is particularly arbitrary given that the Court of Appeal concluded that petitioner had not shown good cause because of an "unexplained delay of over 60 days." Had the Court of Appeal permitted petitioner to be heard on this point, he may have been able to explain the delay which formed the basis of the state court's decision.  Moreover, the Court of Appeal did not provide any rationale for its deviation from the required writ procedures.

This court concludes that, because the Court of Appeal failed to follow state law writ procedures, the California Supreme Court's ultimate denial of relief was objectively unreasonable.  In particular, by depriving petitioner an opportunity to be heard, the state courts deprived petitioner the fundamental hallmark of due process.

As to an appropriate remedy, the court finds that petitioner should be put in the position he would be in had the state court not violated his constitutional rights. In other words, based on the conclusion reached above that petitioner was denied an opportunity to be heard in the California Court of Appeal with respect to the alternative writ which the California Supreme Court directed the Court of Appeal to issue, it would seem that petitioner should be allowed such an opportunity. It is unclear, however, whether this court has the power to direct the California Court of Appeal to do what it should have done in the first place – issue an alternative writ and provide the parties an opportunity to brief the case and be heard at oral argument.

Another possible solution would be to issue judgment along the lines suggested by petitioner. Specifically, this court could issue a conditional order directing that respondent – the warden at the federal immigration detention facility and over whom this court has jurisdiction – to release petitioner within a certain period of time unless the Court of Appeal issues the alternative writ and provides petitioner an opportunity to be heard. This would leave the state courts free to act – or not to act – as they see fit. This approach is somewhat troubling, however, given that it tends to penalize the federal government, which has an interest in ongoing removal proceedings, even though it has done nothing to violate petitioner's constitutional rights.

Should the district judge agree that federal habeas relief is warranted in this case, the court finds that further proceedings to determine an appropriate remedy would be appropriate.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Petitioner's petition for a writ of habeas corpus be granted; and

2. This matter be referred back to the magistrate judge for further proceedings to determine an appropriate remedy.

/ / /

/ / /

1    These findings and recommendations are submitted to the United States District
2 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days
3 after being served with these findings and recommendations, any party may file written objections
4 with the court.  The document should be captioned "Objections to Magistrate Judge's Findings
5 and Recommendations."  Failure to file objections within the specified time may waive the right
6 to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  October 4, 2007

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE